# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black colored LG brand cell phone. Serial # 350252716372720. ("Target Device 5") Enforcement No. ECJ2209000042

Case No. '22 MJ00400

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-5, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:_____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Sean Turpie, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: February 2, 2022

*Judge's signature*

City and state: San Diego, California

Hon. Mitchell D. Dembin, United States Magistrate Judge
*Printed name and title*

# ATTACHMENT A-5

Black colored LG brand cell phone. Serial # 350252716372720. SIM: 89148000006843423482

(Target Device 5")

The Target Device is currently in the possession of Drug Enforcement Administration located at 2055 Sanyo Avenue Suite 220 San Diego, CA 92154.

# ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-5 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of October 1, 2021, up to and including October 20, 2021:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Sean Turpie, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "Target Devices"):

>Black and grey i-Phone with cracked back
>("Target Device 1")

>Motorola brand cell phone with cracked screen
>("Target Device 2")

>Black colored Wiko brand cell phone with a cracked screen
>("Target Device 3")

>Silver and black colored LG cell phone with a black case and a cracked screen. IMEI: 355565102060343
>("Target Device 4")

>Black colored LG brand cell phone. Serial # 350252716372720. SIM: 89148000006843423482
>(Target Device 5")

>Silver and black colored iPhone with cracked screen protector
>("Target Device 6")

as further described in Attachment A-1, A-2, A-3, A-4, A-5, and A-6, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and

963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Deandre Lamont HILL ("Defendant") for importing approximately .26 kilograms (.57 pounds) of methamphetamine from Mexico into the United States. The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2055 Sanyo Avenue Suite 220, San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

1. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice (DOJ), and have been for over 18 years, assigned to the DEA San Ysidro District Office (SYDO). I am responsible for investigating narcotic trafficking in the San Diego County Region. My duties include the investigation and apprehension of individuals involved in drug-related activities. I have been directly involved with hundreds of narcotic and controlled substance investigations and arrests involving violations if California and federal drug laws. These investigations have ranged from simple possession cases to very complicated, multi-defendant narcotic distribution conspiracies. During these investigations some of my duties have included participation in the debriefing of defendants, confidential cooperating individuals, and witnesses; conducting surveillances; participating in undercover meetings with suspects; purchasing a variety of controlled substances while operating in an undercover capacity; and executing search warrants.

3. I have received in excess of 200 hours of formal classroom training in narcotic investigations. I have also received training in money laundering investigations. In the course of my duties, I have used many investigative techniques. For example, I have

interviewed and operated informants; debriefed many individuals involved in criminal activity, including drug trafficking; executed search warrants; conducted physical surveillance; obtained and reviewed records; and utilized electronic and video surveillance. I have also worked and consulted with numerous law enforcement officers and other professionals experienced in drug investigations. As a result, I have become familiar with the methods of operation of drug traffickers and money launderers, including the distribution, storage, and transportation, to include unmanned aircraft system (UAS) delivery systems, the collection of drug proceeds, and the methods used to conceal the nature of drug proceeds. Additionally, I am aware that individuals engaged in drug trafficking often communicate with their criminal associates using cellular telephones and various electronic media platforms. I am aware that drug traffickers often change their telephones or telephone numbers. Additionally, I am aware that drug traffickers conceal the true user of the telephone by subscribing the telephone to another user's name in order to avoid detection by law enforcement. I am also aware that persons discussing criminal matters over the phone often speak in code or vaguely, and I am aware of some common codes or methods of coding. Additionally, I am aware that drug traffickers register vehicles, both land and aerial vehicles, in other individuals names, to escape detection of law enforcement. This training and experienced forms the basis for the opinions expressed below.

4. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in or on vehicles, both land and aerial, or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the

United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

5. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

6. On October 7, 2021 at approximately 8:40 AM, a U.S. Border Patrol Agent was performing assigned duties in the Campo Border Patrol Station's area of responsibility near the Tecate, CA Port of Entry. The Agent heard via service radio that a drone entered the United States over the United States/Mexico International Boundary Fence (which is approximately 25 feet in height in this area). The agent was advised over the radio that the drone was hovering over a nearby parking lot.

7. This parking lot is approximately fifty yards north of the boundary fence. The parking lot directly parallels the boundary fence and has a direct access to Highway 188, which connects the Tecate Port of Entry to Highway 94. In this area, it is common for smuggling organizations to use drones to fly over the boundary fence with narcotics and hire drivers to retrieve the narcotics and take them further into the United States.

8. The Border Patrol Agent responded to the parking lot and heard a buzzing noise above him. He looked up and saw a drone hovering. He watched the drone hover for approximately two minutes and observed it quickly descend to the ground, into the open lot. As the agent was approaching the drone, he observed a gray Mercedes, bearing California license plates, driving directly to the drone. At this time, the parking lot was nearly empty with no other moving vehicles or pedestrian traffic. The Mercedes pulled up right next to the drone, within arm's reach of the driver's side door.

9. The agent went to the drone, picked it up, and saw a wrapped bundle attached to it, which appeared to be consistent with the characteristics of narcotics.

10. The agent identified himself as a Border Patrol Agent and conducted a field interview with the driver of the Mercedes, later identified as Deandre Lamont HILL.

The Agent asked DEFENDANT what he was doing in the area, and DEFENDANT stated he was hired to pick up something in the parking lot and take it to Los Angeles. DEFENDANT also stated that the initial agreement was for him to pick up an unknown male individual who was going to have something on him and DEFENDANT's job was going to drive him to Los Angeles.

11. While conducting the interview, a canine alerted to the package. The contents of the bundle later tested positive for the properties of methamphetamine, with an approximate weight of 0.57 pounds.

12. The Target Devices were found in the backseat of the vehicle DEFENDANT was driving at the time of arrest. During an interview, DEFENDANT told agents that the devices were his.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that DEFENDANT was using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as DEFENDANT, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on October 1, 2021.

## METHODOLOGY

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

17. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

18. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of DEFENDANT's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1, A-2, A-3, A-4, A-5, and A-6, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Sean Turple
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 2nd day of February, 2022.

Honorable Mitchell D. Dembin
United States Magistrate Judge